# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| KEVIN VAUGHN YOUNG, | |
| Plaintiff, | 2:20-cv-02255-VCF |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | **ORDER** |
| Defendant. | |

This matter involves Plaintiff Kevin Vaugh Young's appeal from the Commissioner's final decision denying his social security benefits. Before the Court is Young's motion for reversal or remand (ECF No. 21), the Commissioner of Social Security's motion to affirm (ECF No. 22), and Plaintiff's reply in support of his motion for reversal or remand (ECF No. 24). For the reasons stated below the Court DENIES Young's motion to reverse or remand and GRANTS the Commissioner's motion to affirm[1].

## STANDARD OF REVIEW

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. CONST. amend. V. Social security claimants have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). 42 U.S.C. § 405(g) authorizes the district court to review final decisions made by the Commissioner of Social Security.

---

[1] Plaintiff filed a notice of new authority (ECF No. 25) after he filed his reply. The issue raised in ECF No. 25 was not argued in plaintiff's motion or reply; hence, the government was not given opportunity to address this matter.  This order does not address the issues raised in the notice of new authority.

The district court will not disturb an Administrative Law Judge's ("ALJ") denial of benefits unless "it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation omitted). When reviewing an ALJ's decision, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence means, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is defined as "more than a mere scintilla but less than a preponderance" of evidence. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation omitted).

If the evidence could give rise to multiple rational interpretations, the court must uphold the ALJ's conclusion. *Burch*, 400 F.3d at 679. This means that the Court will uphold the Commissioner's decision if it has any support in the record. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) (stating that the court may not reweigh evidence, try the case *de novo*, or overturn the Commissioner's decision "even if the evidence preponderates against" it).

**DISCUSSION**

**I.     Factual Background**

The ALJ applied a five-step sequential analysis pursuant to 20 C.F.R § 404.1520. The ALJ determined that Young suffered from a severe combination of impairments including Type II diabetes and right rotator cuff tear, status post repair (20 CFR 404.1520(c) and 416.920(c)). AR 18, ¶ 3. The ALJ examined relevant medical evidence including opinions of State Agency medical consultant, Dr. Richard Cestkowski with Family Medicine, Jacqueline Levanthal with Nevada Medical Marijuana Registry, Dr. Priya Nileshwar with Internal Medicine (plaintiff's own medical source), and records of medical treatment. The ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926), thus the ALJ denied his social security benefits. (AR 15-28).

The ALJ concluded that plaintiff had residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift 15 pounds occasionally, ten pounds frequently; stand and/or walk for six hours; can occasionally climb ladders, ropes and scaffolds; can frequently climb ramps and stairs; frequently balance, stoop, kneel, crouch and crawl; and no overhead reaching and occasional lateral reaching. (AR 19).

The ALJ also found that plaintiff meets the insured status requirements of the Social Security Act. Overall, the ALJ concluded that plaintiff was not under a disability within the meaning of the Social Security Act from March 21, 2018, through the date of the decision on June 19, 2020. (AR 28).

Plaintiff challenges the ALJ's finding that the ALJ failed to properly evaluate the medical evidence in assessing Youngs' RFC. Plaintiff states that while the ALJ found that Plaintiff's high cholesterol, hypertension, vision and depression were not severe, the ALJ failed to find Plaintiff's cervical spine and left shoulder impairments severe.

The Commissioner argues that the ALJ properly weighed the medical evidence, including evidence that Plaintiff is not disabled. (ECF No. 22).

**II.    Analysis**

Plaintiff challenges that the ALJ failed to find plaintiff's cervical spine and left shoulder impairments severe at Step 2. Plaintiff states that the October 8, 20218 MRI of the cervical spine revealed mild degenerative changes. (AR 625-626). Physical examinations have revealed decreased range of motion and positive Spurling's Test (a test to detect cervical radiculopathy). Plaintiff was prescribed Hydrocodone-Acetaminophen for pain. (AR 875). As for plaintiff's left shoulder, plaintiff underwent an arthroscopy, rotator cuff repair, subacromial decompression and debridement of the left shoulder. (AR 553). Plaintiff states that the ALJ's error is not harmless because it is not "inconsequential to the ultimate

1  disability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Carmickle v.
2  Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Plaintiff states that proper consideration
3  of these impairments may lead to a different result and that none of the hypothetical questions posed by
4  the vocational expert included a limitation of neck motion. (ECF No. 21).

5        The Commissioner argues that Plaintiff does not substantively challenge, among other things, the
6  ALJ's evaluation of any medical opinion or prior administrative medical findings (including the ALJ's
7  underlying reasoning for finding any opinion/prior findings to be persuasive or unpersuasive), nor does
8  he challenge the ALJ's finding that Plaintiff's subjective testimony concerning his alleged limitations was
9  not consistent with the medical and other evidence in the record.  (ECF No. 22).

10        In addition, Plaintiff does not substantively challenge the RFC finding itself—he does not argue
11  that he cannot perform any part of the RFC, does not identify any evidence showing he is any more limited,
12  nor does he identify any functional limitation that should have been included in the RFC due to any
13  "severe" cervical spine or shoulder impairment.

14  **II.     Findings**

15        The court agrees with the Commissioner and finds that the ALJ did not commit error by not listing
16  cervical spine and left shoulder impairments to be severe at Step two.

17        The ALJ found at Step two that Plaintiff had severe impairments of type II diabetes and
18  right rotator cuff tear, status post repair (AR 18). Plaintiff argues that the ALJ should have found his
19  cervical spine and left shoulder impairments to be severe at step two (ECF No. 19 at p. 5). Plaintiff
20  identifies an MRI of the cervical spine that revealed mild degenerative changes (ECF No. 19 at p. 6, citing
21  AR 625–26). Plaintiff also points to a handful of treatment notes reflecting examination findings of
22  decreased range of motion and a positive Spurling' s test (ECF No. 19 at p. 6, citing AR 709, 745, 753,
23  779, 873). As to his left shoulder, Plaintiff refers to the fact that he had left shoulder surgery and an MRI
24  reflecting a tear and tendinosis (ECF No. 19 p. 6, citing AR 553, 627–28).  Plaintiff cites to examination
25

findings of tenderness to palpation, decreased range of motion, and moderate crepitus (a cracking or popping sound) (ECF No. 19 at p. 6, citing AR 639, 641, 666, 709, 746, 754, 780).

In the ALJ's findings, she discussed and evaluated plaintiff's shoulder injury and neck problems. (AR 19-20). The ALJ stated that plaintiff "alleged on a disability report that was completed on April 17, 2018, that he suffers from blind or low vision, high blood pressure, high cholesterol, diabetes, arthritis, and a shoulder injury which limits his ability to work." Id. The ALJ evaluated plaintiff's medical record of November 27, 2017, when plaintiff was seen for right shoulder pain. The ALJ evaluated evidence relating to Plaintiff's left shoulder and neck in the remaining steps of the sequential evaluation. Id.

The ALJ acknowledged that plaintiff was "diagnosed with unspecified rotator cuff tear or rupture of right shoulder, not specified as traumatic; impingement syndrome of right shoulder and pain in the right shoulder (Exh. B4F/4). Id. The doctor discussed all treatment options with the [plaintiff], and he elected to proceed with shoulder arthroscopy with rotator cuff repair and subacromial decompression." (AR 21).

The ALJ acknowledged that Plaintiff sought treatment for pain in both shoulders in April 2018, in which he complained of new left shoulder pain and tingling (AR 21, citing AR 475). The ALJ noted that Plaintiff's provider examined both shoulders and observed decreased passive range of motion of the left shoulder (AR 21–22, citing AR 477–78 [also noting some pain during the shoulder examination]). The ALJ referenced the fact that Plaintiff had a left rotator cuff repair in mid-2018 (AR 23; see AR 553 [surgery occurred in June 2018]).

The ALJ acknowledged that Plaintiff continued to complain of bilateral shoulder pain from November 2018 through March 2020 (AR 22–23, citing AR932, 920, 896 [reporting doing "fairly well on his medication without any side effects"], 880 [reported "doing fine" and "having some relief from the medications without side effects"], 872 [same]). Upon musculoskeletal examinations, the provider noted that all four extremities appeared normal and that Plaintiff had bilateral shoulder pain, greater in the left shoulder than the right shoulder (AR 22–23, citing AR 933, 921, 897, 881, 873). He was diagnosed with

bilateral shoulder joint pain (AR 22–23, citing AR 934, 922, 898, 882, 874). The ALJ also discussed how Plaintiff's provider noted that Plaintiff was taking medications, and when taking the medication as prescribed, he reported at least a 30% reduction in symptoms (AR 22, citing AR 922; AR 23, citing AR 874).

As to Plaintiff's cervical issues, the ALJ discussed how Plaintiff complained of neck pain and that he had been working on it in physical therapy (AR 23, citing AR 949). This treatment record referred to an MRI that revealed a lordotic (inwardly curved) cervical spine that was "intact" with "nice alignment" (AR 949). The ALJ noted that Plaintiff's provider recommended that he continue conservative management with pain management and therapeutic exercises, and there were no surgical indications (AR 23, citing AR 949).

Further, the ALJ acknowledged that Plaintiff went to physical therapy for his cervical spine and shoulder (AR 23, citing AR 896; see also AR 23–24, citing AR 954, 956). Plaintiff denied doing his home exercises or using ice/heat on the affected areas (AR 24, citing AR 954). Plaintiff was noted to have presented with "minimal soft tissue restrictions" but did not improve with physical therapy (AR 24, citing AR 956). The physical therapist observed "symptom magnification," i.e., exaggeration (AR 24, citing AR 956). As the ALJ noted, Plaintiff was discharged from physical therapist to return to his doctor for pain management (AR 24, citing AR 956).

Plaintiff has stated on a function report on May 5, 2018, that his conditions affected his ability for lifting, reaching, seeing, completing tasks, concentrating, using his hands and getting along with others. (Exh B3E/6). (AR 20). However, in the same report, the ALJ stated that in Plaintiff indicated that he prepare his own meals once or twice a week and could perform household chores, such as, some light loads of laundry, loading the dishwasher and ironing which would be inconsistent with his statement that he had difficulty lifting, reaching, seeing, completing tasks with his hands.  Id.

The ALJ did not commit error by not listing cervical spine and left shoulder impairments to be severe at step two.  A "severe" impairment is that "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *Ford*, 950 F.3d at 1148 (same) (*citing* 20 C.F.R. § 404.1520(a)(4)(ii)). A finding of severity "must be determined [based] on medical evidence." SSR 85-28, available at 1985 WL 56856, at *3 ("The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs."). Notably, a diagnosis of an impairment alone does not establish severity. *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the appellant clearly [has] diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'").  Whether an impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities" is a finding that falls within the purview of the ALJ, not a physician. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). Plaintiff bears the burden of proof at step two to show that an impairment qualifies as severe (ECF No. 19 at 5). *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (burden on claimants at steps one through four).

The Ninth Circuit has held that even if an ALJ errs by neglecting to list an impairment at step two, such error is harmless if the ALJ addresses that impairment later in the sequential evaluation. In *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007), the Court explained that "[e]ven assuming that the ALJ erred in neglecting to list [an impairment (bursitis)] at Step 2, any error was harmless" because "[t]he ALJ extensively discussed [claimant's] bursitis at Step 4 of the analysis" and the decision therefore "reflect[ed] that the ALJ considered any limitations posed by the bursitis at Step 4." Likewise, in *Loader v. Berryhill*, 722 Fed.Appx.653, 654–55 (9th Cir. 2018) (unpublished), the Ninth Circuit held that the ALJ did not err in not finding an impairment (in that case, depression) severe at step two, but even if that determination was made in error, "it would be harmless, because [claimant] prevailed at Step 2—and his case proceeded

to the remaining steps—on the basis of other severe impairments. Once past Step 2, the ALJ was required to consider [claimant's] depression as a medically determinable impairment, even if it was not found to be severe. Thus, once [claimant] prevailed at Step 2, it made no difference for the ALJ's ensuing analysis whether his medically determinable depression was previously considered "severe." *Id.* (*citing* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) and *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)); s*ee Miner v. Berryhill*, 722 Fed.Appx. 632, 633 (9th Cir. 2018) (unpublished) ("The ALJ's failure to list fibromyalgia as a severe impairment at step two is at most harmless error" because "the ALJ found that other of [claimant's] ailments constituted serious impairments, and consequently, in accordance with the governing regulations, moved on to the subsequent evaluation steps") (*citing Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *Garcia v. Comm'r of Soc. Sec.*, 587 Fed.Appx. 367, 370 (9th Cir. 2014) (unpublished) (any error in not identifying depression as severe at step two was harmless because "the ALJ proceeded through the entire sequential analysis, carefully considering all of [the] mental health records in assessing her [RFC]").

A diagnosis of an impairment alone does not establish severity. *Verduzco*, 188 F.3d at 1089. Although Plaintiff identifies the above records in an attempt to show that he has a "severe" impairment, he does not provide any meaningful explanation about what these records show in terms of his functional limitations. While Plaintiff's provider may have recorded some "tenderness" in his left shoulder, this does not speak to any functional limitation in that shoulder. *See Burch*, 400 F.3d at 683 (claimant failed to establish error because she failed to identify "any evidence of functional limitations due to [her impairment] which would have impacted the ALJ's analysis"). Nor does a positive Spurling test (which Plaintiff relies on to substantiate cervical radiculopathy, despite its limited utility) identify the extent to which Plaintiff was functionally limited in the neck. Likewise, the providers' findings of decreased range of motion do speak to a limited functional ability, but Plaintiff's mere citations to the record do not illustrate the extent of any functional limitation that he may have had. These records do not illustrate,

without more, that Plaintiff was "significantly limit[ed]" in his physical abilities such that the ALJ erred in not finding either impairment "severe" at step two. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c).

The ALJ found Plaintiff's testimony was not entirely consistent with the medical and other evidence in the record, as explained in the decision (AR 19–26). The ALJ concluded that Plaintiff could not perform any past relevant work (step four), but that he could perform a significant number of other jobs within the representative occupations of a furniture rental clerk, dealer accounts investigator, and laminating machine off-bearer (step five) (AR 26–28). The ALJ found that Plaintiff was not disabled (AR 28).

ACCORDINGLY, and for good cause shown,

IT IS HEREBY ORDERED that Young's motion to reverse or remand (ECF No. 21) is DENIED, and that the Commissioner's motion to affirm (ECF No. 22) is GRANTED.

The Clerk of Court is directed to enter final judgment in favor of defendant.

DATED this 12th day of April, 2022.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE